UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
NAYSHAWN PERKINS,

        Petitioner,

   -against-

MICHAEL CAPRA,

        Respondent.
------------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ DEC 13 2018 ★

BROOKLYN OFFICE

MEMORANDUM & ORDER

14-cv-5260 (ENV)

VITALIANO, D.J.

  Pursuant to 28 U.S.C. § 2254, Nayshawn Perkins filed this *habeas corpus* petition, *pro se*, following his conviction, in 2005, of second degree attempted murder and first degree robbery. Pet. (ECF No. 1). His petition raises a not unusual assortment of attacks. For the reasons set forth below, the writ is denied and the petition is dismissed.

## Background

  Perkins was tried in Kings County Supreme Court, in May 2005, before Justice Anne G. Feldman and a jury. State Ct. R. at 596 (ECF No. 8) ("R.").[1] In their opening statement, the People fairly and accurately forecasted the evidence that would be presented to the jury. In shorthand summary, the facts set forth here are cited primarily to the prosecutor's opening statement. They are viewed in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (citing *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008)).

### I. The Evidence

  On Halloween 2002, Gibents Jeudy was working as a cashier at Fashion Hut, a store in

---

[1] All page number citations to the state court record refer to the Page ID number generated by ECF.

1

Brooklyn. R. at 616. Juan Guillen, the store's owner, was working in an adjacent office. *Id.* At approximately 11:20 AM, Edward Vaden parked his car outside Fashion Hut and entered the store. *Id.* Shortly thereafter, Perkins arrived. *Id.* Jeudy buzzed him into the store because he recognized him from prior visits. *Id.* Once he entered the store, Perkins pulled out a gun and announced a robbery. *Id.* at 617. While Vaden and two other gunmen canvassed the store in search of merchandise, Perkins pointed his gun at Jeudy and told him to open the cash register. *Id.* When Jeudy failed to comply, Perkins ordered him, at gunpoint, to lie face down on the floor. *Id.* Now lying on the floor, Jeudy heard a noise that made his head flinch. *Id.* at 617-18. At that moment, a bullet grazed the side of his skull. *Id.* at 618. Remarkably, this prompted Jeudy to jump to his feet and grab the barrel of the gun petitioner was holding. *Id.* During the ensuing struggle, Vaden came to the aid of Perkins and kicked Jeudy in the chest, knocking him again to the floor. *Id.* Jeudy lay on the floor looking upward, at which time he saw Perkins stand over him and fire two bullets into his chest. *Id.*

Guillen reacted to the sound of the gunshots by running out of his office and onto the street. *Id.* He saw Vaden's car, which was double-parked, with the engine still running but nobody in the driver's seat. *Id.* at 619. He jumped into the car, put it into reverse, and drove it down the block backwards. *Id.* While sitting in the car, Guillen observed four robbers exiting the store with plastic bags full of Fashion Hut merchandise. *Id.* Seeing Guillen in their getaway car, the robbers turned and ran down the street in the opposite direction, dropping one of the plastic bags. *Id.*

As the robbers staged their escape, a woman still inside the store called the police, who arrived within minutes. *Id.* They took Jeudy to Brookdale Hospital, where he was treated for several gunshot wounds. *Id.* at 619-20. The Crime Scene Unit was called to Fashion Hut and

began searching for forensic and other evidence. *Id.* at 620. They collected the plastic bag that had been dropped to the sidewalk in search of fingerprints. *Id.* Testing would later match the latent prints to petitioner's. *Id.* at 622.

II.    Arrests, Trial, and Conviction

Eleven days after the robbery, on November 11, 2002, Vaden surrendered to the police, and a manhunt for Perkins began. *Id.* at 620. Perkins would be found hiding in his mother's home, where he was taken into custody three months after the crime, on February 3, 2003. *Id.* To confirm Perkins's identity as one of the robbers, the police attempted to put him in a lineup, along with five lineup fillers who physically resembled him. *Id.* at 620-21. Jeudy went to the police station to view the lineup, but Perkins refused to comply with the procedure, spitting and cursing at the detective, putting his head between his legs, and refusing to face the viewing window. *Id.* at 621.

Unable to use their standard lineup procedure, detectives chose to use a photographic lineup, placing a photograph of Perkins alongside photographs of the same five fillers. *Id.* Presented with this array, Jeudy picked out petitioner's photograph, identifying him as the shooter and as one of the robbers. *Id.* Perkins was then formally arrested and soon indicted. *Id.* He would subsequently cooperate with a second lineup, with defense counsel present, and Jeudy would again identify him as the person who shot him point blank and robbed the store on October 31, 2002. *Id.* at 622. At trial, the People would call Jeudy and a variety of witnesses, all corroborated by forensic evidence.

Trial counsel for petitioner, as would be expected, sought to challenge the credibility of the People's witnesses, especially Jeudy, who had related his horrific victim's tale. The defense also called a single witness of its own: Detective Jay Poggi, who was one of the officers who had

3

responded to the robbery, presumably in the hope that a slightly different story might sow some doubt.

In his summation, Perkins's lawyer again sought to impugn the People's witnesses and the believability of their case, but to no avail. The jury found Perkins guilty of attempted murder in the second degree and robbery in the first degree. *Id.* at 1157. On June 14, 2005, Justice Feldman sentenced Perkins, as a second felony offender, to concurrent terms of imprisonment of 25 years for attempted murder and ten years for robbery. *Id.* at 1179.

III.   Post-Trial Proceedings

Petitioner appealed his conviction to the Appellate Division, Second Department. *Id.* at 62. His lawyer on appeal raised several claims, arguing (1) that the photographic array identification was unlawful, (2) that trial counsel was ineffective, (3) that a detective was improperly allowed to testify to petitioner's prior arrest history, and (4) that a prosecutor's comment during his summation deprived petitioner of a fair trial. *Id.* at 85, 101. The Appellate Division affirmed. *People v. Perkins*, 61 A.D.3d 780, 876 N.Y.S.2d 517 (2d Dep't 2009). It held that Perkins's frustration of the attempted lineup justified use of a photo array lineup, that his trial counsel was not ineffective, and that the remaining claims were unpreserved for appellate review. *Id.*

Perkins would then be granted relatively rare leave to appeal to the New York Court of Appeals. *People v. Perkins*, 13 N.Y.3d 748, 914 N.E.2d 1020, 886 N.Y.S.2d 102 (2009). Before the high court, his assigned counsel challenged only the identification by photographic array. R. at 175. This argument did not carry the day, and the convictions were, once again, affirmed. *People v. Perkins*, 15 N.Y.3d 200, 932 N.E.2d 523, 906 N.Y.S.2d 523 (2010).

Now *pro se*, Perkins sought *habeas* relief here. Pet., *Perkins v. Bradt*, No. 10-cv-3955

(ENV) (E.D.N.Y. Aug. 25, 2010) (ECF No. 1). He subsequently moved to stay the proceedings so that he might exhaust additional claims in state court. The Court denied this motion and dismissed the petition without prejudice to refiling after exhausting state remedies. *Perkins v. Racetti*, No. 10-cv-3955 (ENV) (E.D.N.Y. Jul. 15, 2011).

A variety of additional state court proceedings would ensue. Now *pro se* in state court as well, Perkins applied for a writ of error *coram nobis* in the Appellate Division, asserting that appellate counsel had been ineffective. R. at 1185-1200. Relief was denied. *People v. Perkins*, 88 A.D.3d 820, 930 N.Y.S.2d 891 (2d Dep't 2011). His subsequent petition for leave to appeal to the Court of Appeals was also denied. *People v. Perkins*, 18 N.Y.3d 885, 963 N.E.2d 132, 939 N.Y.S.2d 755 (2012). He next moved, under New York Criminal Procedure Law § 440.20 ("CPL"), to be resentenced, on the ground that the trial judge had failed to pronounce the post-release supervision component of his sentence. *See People v. Perkins*, 116 A.D.3d 716, 983 N.Y.S.2d 732 (2d Dep't 2014). The People did not oppose the motion, and, on June 8, 2012, Perkins was resentenced. *See id.* He then appealed from the resentence, but the Second Department again affirmed. *Id.* A subsequent application for leave to appeal to the high court was denied. *People v. Perkins*, 23 N.Y.3d 966, 11 N.E.3d 724, 988 N.Y.S.2d 574 (2014). Perkins next moved, pursuant to CPL § 440.10, to vacate the judgment of conviction, arguing that the trial court lacked subject matter jurisdiction. R. at 1209-18. Supreme Court denied the motion and his request for rehearing. *Id.* at 1241-42. His state court efforts ended there, and his renewed federal *habeas* proceeding followed.

## Applicable Law

Post-conviction federal *habeas* relief is dominated by the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), which provides

that a writ of *habeas corpus* shall not issue with respect to any claim of a prisoner in state custody that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d); *see also Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015) (describing this standard as "AEDPA deference"). Such deferential review applies whenever a state court disposes of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision. *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *see also Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

"Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotations omitted). *Habeas* review under AEDPA "demands that state court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

*Habeas corpus* jurisprudence, given these ground rules, is well-cabined. For these purposes, "clearly established federal law" refers to the holdings, as opposed to *dicta*, of Supreme Court decisions that are controlling law at the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision is "contrary to clearly established federal law," within the meaning of § 2254(d), if it

contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Id.* at 405-06. A state court decision rests on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Consequently, even erroneous state court decisions, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

At the same time, the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Cornell v. Kirkpatrick*, 665 F.3d 369, 375 (2d Cir. 2011) (quoting *Georgison v. Donelli*, 588 F.3d 145, 154 (2d Cir. 2009)). It remains true that "a federal court may reverse a state-court ruling . . . where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103). Yet, the Supreme Court's interpretive guidance must also be kept in mind, namely, that "[i]f this standard is difficult to meet – and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotation marks omitted).

AEDPA superimposes another potential obstacle to federal *habeas* relief, which surfaces when a *habeas* claim was denied by the state court on independent state law procedural grounds. A federal petitioner can overcome such a procedural bar only by either "show[ing] cause for failing to [comply with the state procedural requirement] and prejudice therefrom" or "show[ing] that a fundamental miscarriage of justice would result from a failure to entertain the claim." *McCleskey v. Zant*, 499 U.S. 467, 494-95, 111 S. Ct. 1454, 113 L.Ed.2d 517 (1991).

To satisfy the first requirement, *i.e.*, to establish cause excusing the default, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts' to

raise the claim in state court." *Id.* at 493 (citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)). Such "[o]bjective factors" can include "interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Id.* at 493-94 (citation and internal quotation marks omitted). Once cause has been demonstrated, the petitioner must show "actual prejudice resulting from the errors of which he complains." *Id.* at 494 (citation and internal quotation marks omitted). Alternatively, a petitioner can seek to meet the much higher burden of showing that upholding the state court procedural bar would result in a "fundamental miscarriage of justice," but such a showing is limited to "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *Id.*

## Discussion

I. <u>Identification by Photographic Array</u>

Perkins first argues that he was deprived of due process because Jeudy identified him in a pretrial photographic array, rather than a traditional lineup, and evidence of this identification was introduced at trial. Importantly, the record is crystal clear that the photo array was not the investigating detectives' preferred method to identify the gunman who shot Jeudy. Following his arrest, the police attempted to conduct a textbook lineup. However, Perkins emphatically refused to participate. At this point, the lineup having been frustrated by Perkins, the police resorted to a photo array consisting of headshots of petitioner and the five individuals who would have served as fillers in the lineup. Handed the array, the complainant successfully identified Perkins. R. at 621. At trial, the court permitted the People to introduce evidence of the photographic identification to establish the consistent identification of petitioner as the perpetrator of the crimes charged.

8

Although he has never argued that the photographic array was suggestive, petitioner claims that admitting evidence of that identification deprived him of due process. This contention does not open a pathway to *habeas* relief because the use of a non-suggestive photographic array is not "contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1).

The Supreme Court has, in fact, held that identification through a "photographic array . . . should be suppressed only where 'the photographic identification procedure was so [unnecessarily] suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Perry v. New Hampshire*, 565 U.S. 228, 238, 132 S. Ct. 716, 181 L. Ed. 2d 694 (2012) (alteration in original) (quoting *Simmons v. United States*, 390 U.S. 377, 384-85, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). This line of cases has "emphasized . . . that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id.* at 238-239 (citing *Manson v. Brathwaite*, 432 U.S. 98, 107, 109, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972)).

Perkins fails at the first station. Nothing in the record or his argument even remotely advances the contention that the photographic array was suggestive. That alone is enough to derail petitioner's claim. In any event, it is also evident that the use of the photographic array here was necessary to secure identification. It was Perkins who refused to submit to a lawful lineup procedure, and it was only after this refusal that the police were forced to resort to the photographic array procedure. R. at 621. Because the array was neither suggestive nor unnecessary, Perkins was not denied due process by its use and the subsequent introduction of

the identification at trial.[2] He is not entitled to a writ on this claim.

II. Remaining Claims

Perkins additionally contends that he was deprived of a fair trial and that his trial counsel was ineffective. His fair trial claim is based on a prosecution witness's testimony that Perkins had prior arrests and the prosecutor's reference to this testimony in his summation. Petitioner's ineffective assistance claim is based on his lawyer's failure to object to certain evidence. But, these avenues to relief are blocked by procedural defaults. It is a fundamental principle of federal *habeas* jurisprudence that a writ of *habeas corpus* may not issue unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In New York State, to exhaust state court remedies, if a petitioner's claims are unsuccessful before the Appellate Division, he must raise them in a leave application to New York's highest tribunal: the Court of Appeals. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Where, as here, leave to appeal is granted, the petitioner must then actually present his claims before the high court. *See Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994).

Falling short, Perkins raised only his claim about the photo identification before the Court of Appeals. As a result, he did not exhaust state remedies with respect to his other claims. Moreover, at this point, Perkins may no longer even seek to exhaust those remedies because he is not permitted more than one appeal to the Court of Appeals, *see id.* at 829, and because his

---

[2] Even if the photo identification had been improper, it would not necessarily follow that introducing it at trial was unconstitutional because the Supreme Court has rejected a rule of automatic exclusion for unnecessarily suggestive photographic arrays. *See Perry*, 565 U.S. at 238-39. Instead, were it to find the array improper, the Court would be required to determine "whether improper police conduct created a 'substantial likelihood of misidentification'" by assessing the reliability of the resulting identification. *Id.* at 239 (quoting *Biggers*, 409 U.S. at 201). Petitioner has made no claim that the identification was unreliable and, therefore, would not be entitled to relief even if the Court had found the photographic array to be improper.

unexhausted claims may not now be raised on a motion pursuant to CPL § 440.10, New York's collateral attack proceeding. Claims raised on direct appeal may not be raised on such a motion. *See* CPL § 440.10(2)(a). As a result, the claims regarding the detective's testimony and the prosecutor's summation may no longer be presented to a state court.

To the extent that Perkins claims trial counsel was deficient for failing to object to the photographic array, his ineffective assistance claim is similarly barred, as it was raised before the Appellate Division. *See* R. at 100. To the extent that his ineffective assistance claim is based on failure to object to the testimony about the prior arrests or the prosecutor's summation, it depends solely on the trial record and may not be raised in a § 440.10 proceeding because it was not raised on direct appeal. *See* CPL § 440.10(2)(c).[3]

Because Perkins neglected to exhaust his state remedies and no longer has access to a state forum, these claims are procedurally barred. *See DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (holding that when a *habeas* applicant "can no longer obtain state-court review of

---

[3] The Second Circuit and New York courts have each held that many ineffective assistance claims may not be resolved solely on the trial record and, therefore, are not barred by § 440.10(2)(c) from being raised in collateral proceedings. *See, e.g., Pierotti v. Walsh*, 834 F.3d 171, 178 (2d Cir. 2016); *People v. Harris*, 109 A.D.2d 351, 360, 491 N.Y.S.2d 678 (2 Dep't 1985). However, this rule is not without exception. *See, e.g., Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997); *People v. Brown*, 45 N.Y.2d 852, 853-54, 382 N.E.2d 1149, 410 N.Y.S.2d 287 (1978). Certain claims of ineffective assistance may be evaluated on the record alone. Failure to object to specific testimony is surely such a claim. *See Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (holding that an ineffective assistance claim was procedurally defaulted because counsel's failure to object "was particularly well-established in the trial record"); *Reyes*, 118 F.3d at 138-40 (holding that the trial record provides an adequate basis to resolve an ineffective assistance claim based on failure to object to a jury charge); *Finley v. Graham*, No. 12-cv-9055 (KMK) (PED), 2016 WL 47333, at *10-11 (S.D.N.Y. Jan. 4, 2016) (same). Unlike the claim that counsel failed to provide certain advice prior to trial, *see Harris*, 109 A.D.2d at 360, no evidentiary exploration would be necessary or appropriate to evaluate petitioner's claim. As a consequence, even if Perkins had time to pursue a CPL § 440.10 claim on this ground, his pursuit of it would be futile.

his present claims on account of his procedural default, . . . [he] is not entitled to have the claims entertained in a federal habeas proceeding" (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991))). A federal district court may not consider a claim on *habeas* review when the state court declined to address that claim because of the petitioner's failure to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). It is well-settled that a procedural default of this sort will, ordinarily, constitute an independent and adequate state ground for decision, barring federal review. *Id.* [4]

Applying this measure, petitioner's failure to raise his claims before the Court of Appeals on direct appeal means that, at this stage, he has forfeited any opportunity for further state court review. As a result, the Court may deem those claims procedurally defaulted, rather than merely unexhausted. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *DiGuglielmo*, 366 F.3d at 135; *cf. Grey*, 933 F.2d at 120 ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." (citation omitted)). Not even a stay of these proceedings to attempt exhaustion would save the day for Perkins. Therefore, he is not entitled to *habeas* relief on this ground.

---

[4] In addition to his failure to raise his claims before the Court of Appeals, Perkins failed to raise his evidentiary objections at trial, in contravention of New York's well-entrenched contemporaneous objection rule. *Perkins*, 61 A.D.3d at 782. This rule provides that a defendant may not challenge certain trial court rulings on appeal if he did not object at the time of the ruling. *See* CPL § 470.05(2). Failure to comply with the rule constitutes an independent and adequate ground for decision. *Downs v. Lape*, 657 F.3d 97, 102-03 (2d Cir. 2011). Given the Second Department's finding that Perkins did not obey the contemporaneous objection rule, *Perkins*, 61 A.D.3d at 782, his claims are not cognizable on federal *habeas* review.

A petitioner's procedural default may be excused when the petitioner shows cause for the default and that there is resulting prejudice, or when he shows that an alleged constitutional violation has resulted in the conviction of a person who is probably innocent. *McCleskey*, 499 U.S. at 493-95. Perkins has not attempted to show cause for his default. The default goes unexplained in the petition, and nothing in the record suggests that any factor external to the defense prevented petitioner from raising his claims before the Court of Appeals.[5] Absent cause for the default, the Court need not consider the question of prejudice. Moreover, because the petition does not suggest that Perkins is actually innocent, there is no indication that a fundamental miscarriage of justice would result from treating his claims as procedurally barred. Therefore, a writ of *habeas corpus* may not issue based on the procedurally defaulted claims.

## Conclusion

For the foregoing reasons, a writ of *habeas corpus* is denied, and the petition is dismissed.

Since petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438,

---

[5] Assuming without deciding that petitioner's counsel on appeal was deficient for failing to raise all present claims before the Court of Appeals, this deficiency, nonetheless, does not constitute adequate cause to excuse a procedural default. Because there is no constitutional right to counsel on a discretionary appeal, appellate counsel's performance before the Court of Appeals does not represent constitutionally ineffective assistance and, therefore, does not establish cause for the procedural default. *See, e.g., Hernandez v. Greiner*, 414 F.3d 266, 269-71 (2d Cir. 2005); *Alcindor v. Schneiderman*, No. 15-cv-1892 (AJN), 2018 WL 583117, at *3 (S.D.N.Y. Jan. 25, 2018).

444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.

Dated: Brooklyn, New York
December 6, 2018

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge